CONKEY *vs.* BOND.

Where the defendant was intrusted with a commission to purchase, in the market, for the plaintiff, as his agent, so many shares of the stock of a specified company; *Held* that this required of him to use his best judgment in making the purchase, and to obtain the stock on the most advantageous terms upon which it could be procured from an outside party; and that therefore he was not at liberty to sell his own stock to his employer. ALLEN, J. dissented.

In such a case, without passing upon, or even looking into the question of actual fraud, the transaction will be avoided on the ground that the agent is in a situation of trust which will not allow him to deal with his own property when his principal has reason to believe he is dealing with another's. The sale cannot be upheld, in the light of the simple and plain duty that

Conkey *v.* Bond.

every agent, however limited and circumscribed may be his employment, and irrespective of all questions of benefit or advantage to himself, owes to his principal.

APPEAL from a judgment entered at a special term, dismissing the complaint, with costs. The action was brought to rescind a sale of certain stock, to the plaintiff, by the defendant. The essential facts appearing on the trial are stated in the opinion of Justice BACON.

*B. F. Rexford,* for the appellant. I. The facts as found by the court constituted, in law, the defendant an agent of the plaintiff in the transaction of purchasing the stock. It was an " authorizing by one person of another to do acts"— a " confiding to another" the management of some business to be transacted in his name *or on his account.* This, in law, constitutes an agency. (*Dunlap's Paley on Agency,* 1. 2 *Kent's Com.* 612.)

II. The defendant thus being the agent of the plaintiff to purchase stock, had no right to sell his own, and the sale is void. (*Dunlap's Paley,* 33 *to* 40, *and notes. Story on Agency,* §§ 210–212, *and refs. Moore* v. *Moore,* 1 *Seld.* 261, 262.) " It is a fundamental rule, applicable to both sales and purchases, that an agent, employed to sell, cannot make himself the purchaser, nor, if employed to purchase, can he be himself the seller." The expediency and justice of this rule are too obvious to require explanation. For, with whatever fairness he may deal between himself and his employer, yet he is no longer that which his service requires and his principal supposes and retains him to be. (*Gardner* v. *Ogden,* 22 *New York Rep.* 347, *and cases there cited. Utica Ins. Co.* v. *Toledo Ins. Co.* 17 *Barb.* 134, *and cases there cited. Reed* v. *Warner,* 5 *Paige,* 656. *Green* v. *Winter,* 1 *John. Ch.* 26. *Lowther* v. *Lowther,* 13 *Ves.* 102. *Hawley* v. *Cramer,* 4 *Cowen,* 734. *Michaud* v. *Girod,* 4 *How. U. S. R.* 552. *Darby* v. *Pettee,* 2 *Duer,* 150. *N. Y. Cent. Ins. Co.* v. *National Prot. Ins. Co.* 4 *Kern.* 85 ; *S. C.*

20 *Barb.* 468. *Van Epps* v. *Van Epps*, 9 *Paige*, 241. *Davoue* v. *Fanning*, 2 *John. Ch.* 252. *Greenlaw* v. *King*, 3 *Beav.* 49. *Dobson* v. *Racey*, 3 *Sand. Ch.* 62. *Benson* v. *Heathorn*, 1 *Yo. & Col.* 326. *Brookman* v. *Rothschild*, 3 *Sim.* 153. *Gillette* v. *Peppercorne*, 3 *Beav.* 78.) The last three above quoted cases are "on all fours" in their facts and principles, with this case. The last case quoted presents precisely the case presented by the facts of this—of a long intimacy and confidence reposed by one in the other, and that confidence betrayed in the case quoted, secretly, by a pretended sale to a third person, but in ours without any intermediate sale. The case in 3 Sim. was affirmed in the house of lords. (*See* 3 *Beav.* 80, *in argument of counsel.*) That the defendant acted in this matter as a friend and not as a regular stockbroker, cannot avail him here; for, 1st. He has not made such a claim in his answer. 2d. If he had set up such a claim in his answer, it would not constitute a defense, for it is said by the master of rolls, in *Gillette* v. *Peppercorne*, (3 *Beav.* 82,) "the acting gratuitously makes no difference in my mind as to the result of this transaction. In that case the defendant, in his answer, insisted in his defense that he had not acted as the broker of plaintiff, but merely as his friend—that the prices given were the fair market prices, and that no fraud had been intended." And it is not necessary for the party seeking to rescind the contract on this ground, to show that an improper advantage has been taken over him. It is at his option to repudiate or to affirm the contract, irrespective of any proof of actual fraud. (*N. Y. Cent. Ins. Co.* v. *National Ins. Co.* 4 *Kern.* 91.) Although there may be no design to cheat, it is a constructive fraud. (*Farnam* v. *Brooks*, 9 *Pick.* 212.) The sale of this stock to the plaintiff, by the defendant, was a void sale, whether fraud in fact was practiced or not, and without any proof upon that point, or in relation to its value. "However innocent the purchase may be in the given case, it is poisonous in its consequences. *The cestui que trust is not bound to prove, nor is the court*

Conkey *v.* Bond.

*bound to judge* that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, as Lord Hardwicke observed, and the party not able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the cestui que trust to come, at his own option, and without showing actual injury, and insist upon having the experiment of another sale." (*Davoue* v. *Fanning*, 2 *John. Ch.* 260, 261.) "The inquiry, in such a case, is not whether there was or was not fraud in fact. The purchase is void, and will be set aside at the instance of the *cestui que trust*, and a resale ordered, on the ground of the temptation to abuse and of the danger of imposition inaccessible to the eye of the court." (*Michoud* v. *Girod*, 4 *How.* 557.) These sales are further, in the same case, (*p.* 553,) said to be "*fraudulent* and void, and may be declared to be so, without any further inquiry," that "such a transaction carries fraud upon the face of it." In all such cases the rule appears now to be fully settled, that the purchase, however fair and honest it may have been, must be set aside on the application of any of the parties in interest." (*Hawley* v. *Cramer*, 4 *Cowen*, 734, 735.) "The law does not stop to speculate upon the probability that the agent has resisted temptation. It removes the temptation by proclaiming in advance that he shall not acquire the property." (*Moore* v. *Moore*, 1 *Seld.* 262.) "It is not necessary to show that fraud was intended, or that loss afterwards took place in consequence of these transactions, because the defendant, though he might have entertained no intention whatever of fraud, was placed in such a situation of trust with regard to the plaintiff, that the transaction cannot, in the contemplation of this court, be considered valid." (3 *Beav.* [43 *Eng. Ch.*] 84. *Brookman* v. *Rothschild*, 3 *Sim.* 218, *affirmed in house of lords*.) In the case in 3 Beavan, it appeared, as we are told, (page 79,) that "There was no evi-

dence of the prices charged being extravagant, or of any fraud having been intended." (*See also argument of counsel, pages* 80, 81.) Still the plaintiff succeeded in the cause. (*See also Benson* v. *Heathorn*, 1 *You. & Col.* 343 ; *Mulvany* v. *Dillon*, 1 *Ball & Beat.* 418 ; *Campbell* v. *Walker*, 5 *Ves.* 678 ; *Downes* v. *Grasebrook*, 3 *Mer.* 209 ; *Van Epps* v. *Van Epps*, 9 *Paige*, 242 ; *Campbell* v. *Walker, and ref. in n. a.*, 5 *Ves.* 678, *Sum. ed. ; In re Wallington's Estate*, 1 *Ash.* 307 ; *Mills* v. *Goodsell*, 5 *Conn. R.* 478, 479 ; 2 *Sug. on Vend.* 888, *and ref. in n.* 2 ; *Dobson* v. *Racey*, 3 *Sand. Ch. Rep.* 62.) And in all such cases the agent, trustee, &c. is "liable to account in equity *as for a fraud*." (*East India Co.* v. *Hinchman*, 1 *Ves. jun.* 289. *Dunlap's Paley on Agency*, 38.) The case of *Whichcote* v. *Lawrence*, (3 *Ves. jun.* 740,) so far as it contravenes the above cases, is not good law. It is against them all, and is expressly questioned and overruled in *Davoue* v. *Fanning*, (2 *John. Ch.* 260,) and is corrected in *Attorney General* v. *Dudley*, (*G. Coop.* 146 *to* 148.) Many of the above extracts relate to purchases of property by an agent to sell; but the same rule applies to sales by an agent of his own property. See the text books where the rule is laid down as the same in both cases, and also the above extract from 17 Barb. 134, where the same rule is laid down by Allen, J. So, we take the rule to be clear here, that if the defendant sold this stock at its market value, or without any intention to defraud, *the sale is of itself void.* We have brought our action in a reasonable time, and on discovering the fraud. (*Gillette* v. *Peppercorne*, 3 *Beav.* 85. *Hawley* v. *Cramer*, 4 *Cowen*, 742, &c. *Fish* v. *Miller*, 1 *Hoff. R.* 287. 2 *R. S.* 301, § 52. *Campbell* v. *Walker, and ref. n. a.*, 5 *Ves.* 678, *Sum. ed.*) The plaintiff was, therefore, upon the undisputed facts in this case, entitled to a judgment, and without regard to the question of actual fraud.

III. This conclusion cannot be escaped by the claim that the defendant had no discretion in the matter. (1.) No such

Conkey *v.* Bond. .

distinction is raised in the authorities. (2.) Such a distinction does not exist in principle. The reason of the rule applies equally to an agency to purchase a particular article at a fixed price, or the same article on the best terms that can be procured. In either case, the principal is entitled, at the hands of his agent, to his best endeavors to get the lowest terms that he can. He is also entitled to know that he is dealing with the owner of the property. The reason of the rule—the temptations held out to the purchaser—exist in either case. (3.) The plaintiff's instructions to the defendant were not absolute to purchase at $150 per share ; the agent (defendant) was required to purchase for as much less than that as possible. (4.) In this case, the price, $150, was really fixed upon by Mr. Bond, and it is at his suggestion that the plaintiff agrees to it. It is not a case of a simple direction to an agent to purchase a certain article at a certain price ; but the agent first himself offers the inducement to the principal to buy the stock, tells of its value, that he can get it ; and then, when directed to buy, sells his own. Under these circumstances the defendant had no right, arbitrarily, to sell his own stock at the $150. He had induced the plaintiff to suppose that it was worth that or more, and he had no right, having induced him to buy, to sell his own stock. He should have gone into the market and bought other stock on the best possible terms. It was not his own stock that he had been authorized to send to the plaintiff at $150 ; it was some other stock belonging to some third person, as to which he says, "I know where I can get" it, that he was to buy and send to the plaintiff. (5.) There is an express authority that when an agent is directed to buy certain property at a specified price, the sale is void if the property is his own. (*See Benson* v. *Heathorn,* 1 *You. & Col.* 326.) In this case, (pages 339, 340,) the directors of a steam navigation company employed an agent to look out for a vessel of a particular description, (as here plaintiff and defendant had a talk about plaintiff's getting 10 shares of this stock

and its price.)    The agent reports that he has bought a ship for $1500, (as here in his letter of January 31, the defendant writes he can get the 10 shares for the $150 per share.)    The report is adopted and the vessel taken by the company, and the money paid, (so here the plaintiff writes that he will take the shares at the price, and then takes the shares and pays the price,) but it turns out that this vessel was the property all the time of the agent, and the court declares the sale void, (and here the stock was all the time the defendant's, and we ask a similar judgment.)    The facts of the case are the same; the agent in each reports what the property can be bought for, and is directed to buy for that price.

IV.  This transaction is void, for the reason of the concealment by the defendant of the fact that the stock sold was his own.    The authority given, taken in connection with the previous negotiation, was that the defendant should go into the market and buy 10 shares of this stock, or at least buy it of some third person, in whose hands it was on the 31st January, when the defendant wrote that he knew where he could get it.    The defendant clearly had no authority to sell his own stock; he was only to buy for the plaintiff that of some other person.  (*Brookman* v. *Rothschild*, 3 *Simons*, 153.)  And upon the grounds that the defendant was only authorized to buy for us, and not to sell to us, and that he concealed the fact that he sold his own stock, pretending that it was another person's, we claim that the sale was void at our option.

*H. A. Foster*, for the respondent.    I. The sale of the stock in question was valid.    There was no fraudulent intent on the part of the defendant: and he did not desire or intend to sell any part of his own stock; and he transferred to the plaintiff because he thought he would be disappointed if he did not obtain the number of shares which he had ordered.    (1.) The general rule, that an agent authorized to sell for his principal, cannot be the purchaser, or authorized to purchase for

Conkey *v.* Bond.

his principal, cannot sell to him his own property, is not disputed. And it is conceded further, *as a general rule*, in such cases, that the court will not inquire whether the sale or purchase is injurious to the interests of the principal or not, provided he at once applies to have it set aside : but in all the cases where it has been so held, *one object* at least of the agent has been, either to sell his own property, or to purchase that of his principal. (2.) In this case, the defendant, in *January*, informed the plaintiff that he did not want to sell any of his stock, although the plaintiff then wanted to purchase. When he was desired by the company to sell some of their stock, he informed the plaintiff by letter that he could get some for him at $150 per share. The plaintiff sent him an absolute order for the ten shares at that price ; but before the order arrived, the company's stock had been sold by the company, and the authority to sell withdrawn. Under these circumstances the defendant sent to the plaintiff just what he desired, and at the same price at which he had ordered it ; and he sent it merely because he thought the plaintiff would be disappointed, if he failed to obtain it. What he sent him was of precisely the same value as the shares of any other person. (3.) There is no *substance* or *equity* in the claim of the plaintiff, and if it can be maintained, it must rest entirely upon the *form* of the transaction, which in this case is a mere shadow. (*See Smith* v. *Lansing, per Welles, J.* 22 *N. Y. Rep.* 527 ; *Horton* v. *Morgan,* 19 *id.* 170, *and per Denio, J. at p.* 173.)

BACON, P. J. The facts of this case, so far as they are necessary to be understood to present the question of law arising from them, are very few, and without dispute. They rest in part upon documentary evidence, and in part upon testimony which is unimpeached and uncontradicted. They are embraced substantially in the following brief statement. In January, 1857, the defendant was the owner of a number of shares of the Oswego River Starch Company, and the

agent of the company in the city of New York for disposing of its manufacture. In an interview at that date between the parties, in New York, after a glowing account by the defendant of the business of the concern, and of which the plaintiff had previously no knowledge whatever, the plaintiff expressed a desire to purchase some one or two thousand dollars worth of the stock, if any was to be obtained in the market, at a price not exceeding $150 per share. The defendant thereupon undertook to buy some if it could be procured, and if successful, he was to apprise the plaintiff, who resided in the county of Chenango. Accordingly, on the 31st of January, 1857, he addressed a letter to the plaintiff, reiterating his opinion of the value of the investment, stating that he knew where he could obtain ten shares at $150 per share, and asking the defendant if he would like it. He states further that he does not wish to advise the plaintiff, but if he should conclude to take the stock, he would "get and send him a certificate" for that amount. The plaintiff answers this letter on the 5th of February, remarking that he liked the statement, and was willing to take that amount, and desiring the defendant to *obtain the certificate*, when he would at once put him in funds. This letter the defendant acknowledges on the 19th by a brief note, saying that he would write and get the certificate as soon as possible ; and on the 25th of February he writes again, inclosing the plaintiff the scrip for ten shares of the stock, and adding in a postscript, "If we meet with no mishap, I think our stock will pay well. I could sell quick at $150, if *I had any to dispose of.*" The plaintiff remitted the $1500, and that closed the transaction.

What occurred subsequently it is unnecessary, in view of the question presented by the case, to allude to. It is only requisite to state that the defendant did not in fact purchase any stock from the company, or from any outside party, but caused 10 shares of his own stock to be transferred to the plaintiff; that he did not communicate this fact to the plaintiff,

Conkey *v.* Bond.

at any time during the negotiation nor subsequently, and the plaintiff was entirely ignorant of that fact, and never learned it until the month of June in the following year. At the time of this transfer the affairs of the company were in an embarrassed condition, although there is no evidence that the defendant had any knowledge of this; and in the same year, 1857, the concern was wound up, and passed into the hands of a receiver, and a new company was organized upon the ruins of the old association.

Upon the trial, these facts, with others, appeared, and the presiding justice found that the transfer was made in good faith, by the defendant, believing that the stock was worth the price he received for it, and with no intent to defraud the plaintiff; that upon the facts the plaintiff was not entitled to rescind the sale; and he ordered the complaint to be dismissed, with costs.

It is undoubtedly true that the action in this case is based mainly and prominently upon the theory of an actual fraud perpetrated upon the plaintiff by representations of the value and condition of the stock, made by the defendant, with knowledge of the falsity of such representations. This theory, however, cannot be supported. The evidence wholly fails to connect the defendant with the company in such a way as necessarily to have made him cognizant of its affairs. On the contrary, he had every assurance from the active officers and agents of the concern that they were in a palmy condition, and I concur entirely in the finding which acquits the defendant of any actual intent to deceive the plaintiff into the purchase of a worthless stock. Granting this, however, the case has another aspect which is clearly stated in the complaint, and sustained by evidence which was received without objection; and upon the case thus made the plaintiff has a right to ask relief, if by the rules of the law he is entitled to it. Upon principles well settled, both here and in England, I think the plaintiff is entitled to call for a rescission of this contract.

Conkey v. Bond.

It is clear that the defendant was intrusted with a commission to purchase in the market, for the plaintiff, so many shares of the stock of the company in question, and to that extent and for that purpose he was the agent of the plaintiff. This required of him to use his best judgment in making the purchase, and to obtain the stock on the most advantageous terms upon which it could be procured from an outside party. He was not at liberty to sell his own stock, for this would place him in the unauthorized position, substantially, of both a purchaser and a seller of the same commodity. Certainly he could occupy no such position without fully apprising the plaintiff of the facts and then submitting it to his judgment, whether he would or would not take the stock thus offered. to his acceptance. It is quite possible that the plaintiff would have been willing to receive a transfer of the defendant's stock on precisely the same terms, and for the same price, that he had reason to believe he was paying upon an actual purchase by his agent from another source; and still it is quite as possible that the communication of such a fact might have induced him to question the propriety of the purchase. At all events he was entitled to be put in possession of the actual facts; and the suppression of them, without imputing any improper design to the defendant, which I do not believe existed, was in law a constructive fraud which, equally with actual fraud, entitles the plaintiff to relief.

The principle I have alluded to as applicable to this case is as well settled upon authority, as it is consonant with the elementary principles of fair and ingenuous dealing among men. In *The Utica Insurance Co.* v. *Toledo Insurance Co.,* (17 *Barb.* 132,) this court held that a person cannot act as the agent of both parties in the making of a contract, when he is invested with a discretion, and is bound to exercise his skill and judgment in behalf of each.

It is a fundamental principle, says Justice Allen, applicable to both sales and purchases, that an agent employed to sell cannot make himself the purchaser, nor if employed to

purchase can he be himself the seller. The validity of such a contract does not depend upon the question whether he derives any advantage from the transaction, but the policy of the law, without inquiring into the possible benefit, or into the actual good faith of the agent, declares the act void. The same question arose in *The N. York Central Ins. Co.* v. *The National Prot. Ins. Co.*, (20 *Barb.* 468,) and was decided in the same way, and upon appeal to the court of appeals the judgment was affirmed. (*See* 14 *N. Y. Rep.* 85.) In the opinion Judge Denio reaffirms the doctrine contained in the 17th Barbour, and says that it is not necessary to relief from such a transaction to show that any improper advantage has been obtained. It is at the option of the party seeking relief to affirm or repudiate the transaction, irrespective of any proof of actual fraud, and so are all the cases.

The English decisions are uniformly to the same effect, especially in reference to transactions between trustees and their *cestuis que trust*, and in respect to all employments of a fiduciary character, and, where a special agency is created, the courts exercise a most jealous scrutiny. The case of *Gillette* v. *Peppercorne*, (3 *Beav.* 78,) may be taken as illustrative of the extent of the rule, and as presenting features strikingly analogous to the case at bar. The plaintiff employed the defendant, who was a stockbroker, to buy some canal shares. He apparently bought them of a third party who was the ostensible owner, but who it afterwards turned out held them in trust for the defendant. The court, after the lapse of several years, and without entering into the question of the fairness of the price, held the transaction void upon grounds of public policy. It was insisted in that case that the defendant was not acting in his capacity of broker, or as an agent in any sense, but gratuitously, and as the friend of the defendant; but the master of the rolls said that if that were so, and the act was gratuitous, it made no difference as to the result of the transaction.

Where an agent is employed, he remarked, it is in the

faith that he will act for the benefit of his employer, and not with the idea that he has himself an interest in the very transaction, which may be opposed to his principal. It is not necessary to show fraud, or even ultimate loss, but the transaction is avoided on the ground that the defendant was in a situation of trust which did not allow him to deal with his own property, when his principal had reason to believe he was dealing with another. The same remark, in substance, is made by Vice Chancellor Shadwell, in *Beekman* v. *Rothschild,* (3 *Sim.* 216,) where he says, one has a right to complain if his agent does not do that which he is employed to do, and represents that he has done as he was directed, but in truth has done quite a different thing.

These cases, and the reasons and principles upon which they are founded, are decisive as to the rule which must govern in disposing of the rights of these parties. Without passing upon, or even looking into the question of actual fraud, the transaction complained of is one that cannot be upheld in the light of the simple and plain duty that every agent, however limited and circumscribed may be his employment, and irrespective of all question of benefit or advantage to himself, owes to his principal.

The judgment must be reversed, and a new trial granted, with costs to abide the event.

MULLIN and MORGAN, Justices, concurred.

ALLEN, J. (dissenting.) The question of fraud in fact, was disposed of by the judge at the circuit, and his conclusions, sustained as they are by the evidence, final. The circumstances mainly relied upon by the plaintiff, to wit, that the stock transferred was the property of the defendant, and was not a purchase by him from a third person for the plaintiff, as the latter supposed, would have been an important item in the evidence to establish actual fraud, had there been any evidence of fraudulent intent, or any circumstances upon

Conkey *v.* Bond.

which to charge the defendant with fraudulent representations or a fraudulent concealment of the true condition of the stock company.    As evidence tending, as is claimed, with the other evidence in behalf of the plaintiff, to impeach the fairness of the transaction, it was urged by the judge at the trial, and clear effect given to it.    As explained by the testimony, and in connection with all the circumstances and the other evidence in the case, it does not show fraud on the part of the defendant.

The only ground upon which the plaintiff can hope to succeed, is that which was mainly taken by his counsel upon the argument, to wit, that the defendant, in acting for the plaintiff in the transaction, could not at the same time act for himself, as that would be to act as buyer and seller of the stock; that having as buyer represented the plaintiff, and as seller acted for himself, the sale is void.    The law of agency is well settled, and the principles contended for are well established and elementary.    But to make them applicable, an agency must be shown.    It must appear that the defendant was employed, with or without compensation, to do some act for the plaintiff in which a trust or confidence was reposed in him and in his discretion, and in the performance of which his judgment was called into action, and his duty to the plaintiff was inconsistent with his own interest, as the other party to the transaction.    The negotiation was concerning the purchase by the plaintiff of ten shares of the capital stock, one share in which was worth as much as any other share.    The price was agreed upon by the plaintiff, upon being told by the defendant the price at which the ten shares could be bought.    It chanced that the stock which the defendant supposed could be bought by the plaintiff was sold by the holder before the receipt of the letter of the plaintiff directing the purchase; so that there was no alternative on the part of the defendant except to transfer ten shares of his own stock or disappoint the plaintiff, and he chose the former.    On the 31st of January, 1857, the defendant wrote

to the plaintiff that he knew where he could get ten shares at $150 per share, and asks, " would you like it ? let me know ;" and says, after declining to advise him, " should you conclude to take it, however, I will get and send you a certificate of same and you can then place me in funds." The plaintiff, in reply, says, in substance, that he thinks it must be a good investment and that he would risk the amount, and adds, " you may therefore obtain the certificate and I will put you in funds on the receipt." The plaintiff made his own contract, acting upon his own judgment, reposing no confidence in the defendant, save in the honesty of his representations ; and all that the defendant had to do for the plaintiff was to procure the certificate for the plaintiff ; and whether the certificate represented stock once owned by the defendant, is not material. The plaintiff had of the defendant all the services for which he contracted. If A. buys a horse and there is no fraud or deceit as to his qualities and value, it cannot invalidate the contract of sale that the buyer supposes that the seller is acting as an agent when he in fact is selling his own property. If the defendant, when called upon by the plaintiff, had represented the stock to belong to a third person, and had expressly sold it to him as such, it would not have vitiated the sale. The prior ownership did not affect the value of the stock, and the price was agreed upon by the plaintiff and by the defendant or his agent. In *Gillette* v. *Peppercorne*, (3 *Beav.* 78,) there was an actual agency, and the real seller of the stock fixed the price as the agent of the purchaser, and that case was very clearly distinguishable from this.

The judgment should be affirmed.

Judgment reversed. and new trial granted.

[ONONDAGA GENERAL TERM, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan*, Justices.]