Speir, J.
[After stating the facts.]—The evidence I think shows that she never saw the premises and did not know that the mortgages were second mortgages, until after they had been executed and returned to her. The weight of the evidence, as between the plaintiff and the attorney, on the question of her knowledge that they were second mortgages, is with the plaintiff. Whatever doubt there may be on that point, however, is removed by the witness Earle, who in presence of the plaintiff and defendant at Earle’s house about two years after the date and delivery of the mortgages to the plaintiff, in a conversation between the parties, said to the defendant, “ that he did a very wrong thing in making these mortgages second mortgages without consulting Mrs. Whitney (plaintiff), before he had done so, and he (defendant) said he was very sorry that he had anything to do with it.” He did not deny the allegations of investing on second mortgages without consent of the plaintiff.
The premises were subsequently sold under foreclosure of the two $10,000 mortgages and were bid in for the sum of about $8,000 each for the owner of the mortgages. The investment turned out to be worth-, less, whatever the value of the premises may have been at the time of the investment. The testimony as *74 to this value is contradictory. I am not sure that this is of much importance in the view I take of the obligation which rested on the defendant when he undertook to make a good investment for the plaintiff in real estate. Where agents and brokers in real estate are employed for different parties, and there is evidence on both sides, the statements are almost certain to conflict with each other. The objection lies deeper. It cannot be prudent to advance moneys where there are prior mortgages. Without promising to make “a first class investment” in words, the defendant was bound to make a good and proper investment. He cannot be permitted to take the risk always attending a second mortgage and expose the plaintiff to the peril of losing her money, unless with her consent and knowing that she was provided with or could command the means of controlling the large sum of $20,000 in order to protect her $6,000, even on the assumption that the property was worth the amount of both sums and accruing interest.
It is not necessary that the defendant should be guilty of active fraud in order to maintain the action against him for neglecting to perform the duty he had undertaken when he made the investment. A second mortgage cannot be said to be a good investment. It required neither the skill of a lawyer nor that of an expert in dealing in real estate as to securities to say that such an investment could be considered a good security in loaning upon bond and mortgages among men engaged in that business for themselves or others. The relation between the parties was of a fiduciary character, and largely imposed confidence and good faith in the discharge of the duty assumed, and should not be handed over to another to be performed. The defendant is presented in his answer as having the experience of years as a large and extensive dealer in real estate, as to its value, and in the making of loans *75 upon bonds and mortgages. The parties did not stand upon an equal footing. The plaintiff is a woman not usually accustomed to dealings of this kind, and the whole case shows her implicit trust in her agent, known to be skilled in all such matters.
It is quite apparent that the attorney to whom he delegated the execution of the trust, was then engaged in assisting other parties in raising the loan of the two first mortgages of $10,000 each on these premises, and that these mortgages and the two mortgages in suit Were being negotia-ted at the same time.
The exhibit in the case furnished by the attorney, conclusively shows that the loan for the first mortgages was obtained only at a ruinous discount—and the funds furnished by the plaintiff for the second mortgages were used for the purpose of paying this discount and discharging other heavy liens on the property before the first mortgages. could be executed. Both transactions were finally closed together, and the expenses were charged to both parties, but the money obtained on the second mortgages was in reality the fund from which it was taken.
These are facts known to the defendant, or what is the same thing, he must be presumed to have known them. His office was that of his son, and his son was the attorney who did the business at that office. The defendant was employed by the plaintiff as her trustee, to invest her money. It is not necessary that the agent should be charged with actual fraud to subject him to an action for neglecting to perform a duty he has undertaken. An agent is bound not only to good faith, but to reasonable diligence, and to such care and skill as is ordinarily possessed by persons of common capacity engaged in the same business (Story on Agency, §§ 183, 184; Opinion of Rapallo, J., in Heinemann v. Heard, 50 N. Y. 35). The Lord Chancellor, in the case of Thomson v. Christie (1 MacQueen’ s *76 App. Cas. 236), strongly disapproves the right of an agent to advance funds on the security of houses and lots already actually mortgaged.
The plaintiff must have judgment with costs.