Platt *v.* Baldwin.

## City Court.

### Trial Term—April, 1886.

## JOHN H. PLATT *against* JOHN BALDWIN.

Where a broker employed to sell real estate acts for both buyer and seller and the fact is unknown to his principals, he cannot recover for his services from either party. If, on an exchange of property, it be made known to all the parties, that the broker is acting as a middle

Platt *v*. Baldwin.

man, and is to be paid by both sides, he may recover from both. If the agency be limited to bringing the parties together, and does not involve the duty of negotiating for either, he may recover from both, whether the fact that he was to be paid by both was known or not, as the mere bringing of parties together does not involve negotiation or call for the exercise of the broker's judgment or advice. Agents must act in the best of faith toward their principals.

McAdam, Ch. J.—A broker employed to sell land cannot recover compensation from both parties. Employment by one party is incompatible with employment by the other (Watkins *v*. Cousall, 1 *E. D. Smith*, 65; Vanderpeel *v*. Kearns, 2 *Id*. 170; Dunlap *v*. Richards, 2 *Id*. 181: Pugsley *v*. Murray, 4 *Id*. 245); and it makes no difference that the transaction is an exchange of lands, not a sale for cash (Pugsley *v*. Murray, *supra;* Duryea *v*. Lester, 75 *N. Y*. 442.; S. C., 8 *Weekly Dig*. 116). In the case last cited, the court of appeals held that where a broker employed to sell real estate acts for both buyer and seller, and the fact is unknown to his principals, he cannot recover for his services from either party. That case was for brokerage on effecting an exchange of personal property for real estate. It lays down the broad rule that where the double agency is unknown to his principals, it is a breach of the agent's implied contract with each to use his last efforts to promote the interests of his principal, and operates, or is likely to operate, as a fraud upon both and the law will not in such a case enforce the contract for compensation, irrespective of the consideration whether the sale made was or was not advantageous to the party from whom compensation is claimed. This objection is especially pleaded in the answer, and is one the court is bound to notice. The exception to the rule is, that if, on an exchange of property it is made known to all the parties that the broker is acting as middleman, and is to be paid by both sides, and this is understood as one of the conditions of the employment, then the principals are apprised in advance of the broker's status, and his conduct cannot operate as a fraud upon either, and in such

Platt v. Baldwin.

a case a recovery is permitted from both (Rowe v. Stevens, 83 N. Y. 621). The complaint alleges an employment by the plaintiff to procure a customer for the defendant's farm, and that acting under this employment he found a customer in one Margaret O'Sullivan. The evidence proved that he was already in O'Sullivan's employ, and that there was no notice to the principals bringing home knowledge of this fact. No recovery can be had under these circumstances (See cases before cited). The pleadings and proofs do not show that the plaintiff was a mere middleman, who was to bring parties together, leaving them to make their own contracts, as appeared to be the case in Siegel v. Gould (7 Lans. 177), and in Fritz v. Finnerty (10 Cent. L. J. 487). If the extent of the agency be limited to bringing the parties together, and does not involve the duty of negotiating for either, the agent is termed a "middleman," and may contract for and receive pay from both (10 Cent. L. J. 488). But if the agency be not so limited, and the employment involves, as it generally does, the duty of negotiating for his principal, the agent can not serve two masters with adverse interests without informing each of the fact, that they may know to what extent they may safely confide in his advice and follow his judgment. Upon the pleadings and proofs, the complaint was properly dismissed, and the motion for a new trial must be denied. See also as maintaining same principle: Carman v. Beach, 63 N. Y. 97; Hoyt v. Howe, 2 Weekly Dig. 177; King v. Parr, 4 Alb. L. J. 44.

### Good Faith required.

An agent is held to the utmost good faith in his dealings with his principal. If he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it is such a fraud upon his principal as forfeits any right to compensation for his services (Murray v. Bland, 102 N. Y. 505). An agent may not act in such a transaction where he has an interest or employment adverse to his principal (Ib.).

A real estate broker's commissions are earned whenever he has procured a buyer who will comply with the conditions fixed by his principal for the property proposed to be sold. But it is to be understood that this rule depends not only on the fact that the broker is to be regarded as the agent of the seller, but that as such agent he acts with the utmost good faith towards his principal; and if he does not so act, he is entitled to nothing.

A broker made an offer to the owner of real estate of $135,000 for the property, when he actually had an offer of $140,000, which he did not disclose to the owner, or give the name of the party who actually wanted the property. *Held*, that the owner was justified in refusing to acknowledge him as his broker, and declining, on the sale of the property, to pay him any commissions. The court, per GORDON, J., said : " It does not require the discernment of a very acute *casuist* to perceive that it was Pratt's duty to submit this whole matter to Patterson, and allow him to determine whether he would prefer as a purchaser the responsible or irresponsible party; whether he would accept the bond and mortgage of Natt rather than those of Harding. Good faith forbade the concealment of an arrangement intended for the advantage of the buyer rather than that of the seller" (Pratt *v.* Patterson, 17 *Pittsburg Legal J. N. S.* 153).

An agent cannot deal validly with his principal in any case, except upon showing the most entire good faith, a full disclosure of all facts and circumstances attending the transaction, and an absence of all undue influence or imposition (Comstock *v.* Comstock, 57 *Barb.* 453). Transactions which would be held unobjectionable between other parties, are often held void if between persons occupying confidential relations (*Ib.* See also *Story on Agency*, § 182). In *Ewell's Evans on Agency*, p. 293, paragraph *f*, the author says: " Very little need be said of the necessity incumbent upon an agent to act in good faith. The agent's position is one of trust, and as will be seen hereafter, no agent will be allowed to take any advantage of his position to the detriment of his principal."

## Double Dealing.

Where one induces A. to employ him as an agent to negotiate a contract with B., concealing the fact that he is already employed by B. to negotiate with A., B. cannot enforce a contract into which A. is thus induced to enter (Cassard *v.* Hinman, 6 *Bosw.* 8). The rule is that a broker cannot act for both parties (New York Cent. Ins. Co. *v.* National Protection Ins. Co., 14 *N. Y.* 85 ; National Ins. Co. *v.* Toledo Ins. Co., 17 *Barb.* 132 ; Claflin *v.* Farmers' and Citizens' Bank, 25 *N. Y.* 293 ; Carman *v.* Beach, 63 *Id.* 97 ; *Story on Agency*, §§ 31, 210, 212, 214).

Platt *v.* Baldwin.

## Agent Cannot Act for Himself.

An agent undertaking a special business for another cannot, on that subject, act for his own benefit to his principal's injury. If he does, he will be held as trustee for the principal in respect to any beneficial result (Safford *v.* Hynds, 39 *Barb.* 625. And see 1 *Johns. Ch.* 394; 5 *Paige,* 650; 36 *Barb.* 349; 32 *Id.* 9 ; *Story on Agency,* §§ 9, 10, 210, 211).

Nor can the agent purchase on his own account (Torrey *v.* Bank of Orleans, 9 *Paige,* 649; aff'd, 7 *Hill,* 260. And see 3 *Sandf. Ch.* 60; 5 *N. Y.* 256; 52 *Id.* 312; 56 *Id.* 285; 64 *Id.* 440; *Story on Agency,* §§ 210, 211).

## Adverse Interest of Agent.

The court of appeals, in Murray *v.* Beard (2 *N. Y. St. Rep.* 467) said : " The plaintiff, while assuming to act for the defendants in obtaining the contract of sale, was, in fact, under equal obligations to competing dealers, to assist them in effecting the same sale. Thus, if the plaintiff's services could have been of advantage to any one, he was under the necessity of being treacherous to one employer or another. An agent is held to *uberrima fides* in his dealings with his principal, and, if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal as to forfeit any right to compensation for services (citing *Story on Agency,* §§ 31, 334; *Story Eq. Jur.* § 315; *Ewell Evans on Agency,* 268 ; *Dunlap Paley on Agency,* 105, 106 ; Carman *v.* Beach, 63 *N. Y.* 97, 100). It is an elementary principle that an agent cannot take upon himself incompatible duties and characters, or act in a transaction where he has an adverse interest or employment (New York Cent. Ins. Co. *v.* National Protection Ins. Co., 14 *N. Y.* 85 ; *Ewell Evans on Agency,* 14 ; Greenwood *v.* Spring, 54 *Barb.* 375 ; Neuendorff *v.* World Mut. Life Ins. Co., 69 *N. Y.* 389). In such a case he must necessarily be unfaithful to one or the other, as the duties which he owes to his respective principals are conflicting, and incapable of faithful performance by the same person."

Prof. DWIGHT, in his Notes on Contracts (3 *Columbia L. Jur.* 116), says: " An agent holds a fiduciary relation toward his principal. It is a deduction from this proposition that he cannot put himself in a position adverse to that of his principal. Accordingly, if he is employed to buy, he cannot sell ; and this is true, even though his act be a mere friendly one, and he sells at the market price and with entire fairness (Conkey *v.* Bond 34 *Barb.* 276 ; aff'd in 36 *N. Y.* 477). So if the agent has instructions to buy of another at an auction sale, he can-

not, even though there be bids above the instruction price, buy for himself (see Moore *v.* Moore, 5 *N. Y.* 256)."

## Liable for Want of Diligence.

An agent's omission to exercise skill and diligence in the performance of a duty undertaken for his principal, renders him liable for resultant damages, even if he act in good faith and without intention to defraud (Heineman *v.* Heard, 50 *N. Y.* 27 ; Whitney *v.* Martine, 6 *Abb. N. C.* 72).

## When Brokerage Earned.

When a broker employed to effect a sale of property, has found a person of sufficient responsibility willing to take upon the terms named, he has performed his contract and is entitled to his commission (Duclos *v.* Cunningham, 102 *N. Y.* 678). The broker need not disclose the name of the purchaser unless required (*Ib.*). Upon the question of procuring cause and when brokerage is earned, see Barnard *v.* Mannot, 3 *Keyes*, 203 ; S. C., 33 *How. Pr.* 410 ; Sussdorf *v.* Smith, 55 *N. Y.* 319 ; Mooney *v.* Elder, 56 *Id.* 238; Smith *v.* McGovern, 65 *Id.* 574 ; Sibbald *v.* Bethlehem Iron Works, 83 *Id.* 378. As to which of two brokers is the procuring cause, see Martin *v.* Rillings, 2 *City Ct. R.* 86.

A case on broker's commissions does not often get into the court of appeals. The decision in Jarvis *v.* Schaefer, 7 *Cent. Rep.* 675) sustains a broker's claim on several points. First, that one not the owner (in this case the husband of the owner), but acting as agent in employing a broker, will be personally liable for the commission if he engages to pay one ; and, what is more important, that an undertaking to be personally bound may be inferred from the fact that he promised personally, without any qualification, even though the fact of his agency was known to the broker.

On another point the court held as follows :

"While it may be difficult for a broker to serve, with equal efficiency, two masters, neither of them can complain nor refuse compensation if it was promised when fully informed that his agent held the same relation to the adverse dealer ; especially when the principals agreed upon the terms of sale and neither of them was prejudiced by the real character of the broker.

"That defendant paid full commissions to another broker does not impair the plaintiff's right to compensation for services actually rendered in pursuance to a valid contract."

Platt *v.* Baldwin.

## Right of Real Estate and Loan Brokers to Commission.

The right depends upon the contract with the employer; therefore may rest upon contingencies, as well as the conditions in the contract. If it be to furnish a purchaser, the commission is earned when a purchaser, able and willing to buy on the terms proposed, is found by the broker and introduced to the vendor. If the insolvency of the purchaser be relied on as a defense, that must be specially pleaded and proven, and plaintiff must show that the purchaser was willing to accept the contract in its exact terms. The refusal of purchaser to complete the contract because of defective title, is no defense. If there be no contract, no commission will be allowed, no matter how instrumental the broker may have been in bringing about the sale or purchase. Where the authority is revoked before a sale is effected, the right to remuneration for what he has done depends on the terms of his employment.

A broker employed to sell lands on certain terms, showed them to a person who negotiated wholly with the owner, who did not know that the party had any connection with the broker ; the owner, when the negotiations began, having suspended the authority of the broker, the owner sold the land to the party on lower terms than those offered by the broker. *Held*, that no commission could be recovered. If the principal permits the agent to proceed with his search for a purchaser until he finds one, without notice that he is discharged, or that himself has effected sale, he will be liable for commission. After a purchaser is found, the principal cannot discharge the agent and complete the transaction himself, so as to deprive the agent of his commission (Richards *v.* Jackson, 31 *Md.* 250, and a large number of English and American authorities).

A broker is not entitled to commissions for unsuccessful efforts; his reward comes only with success. A principal, after he has placed his property in a broker's hands, may sell it himself to a purchaser not procured by the broker, and will not be held for commissions, unless he contracted so as to be so liable. The principal cannot captiously refuse to complete sale or purchase to one procured by the broker who agrees to the terms. The broker must comply with the terms of his contract, however onerous. If a broker act for both parties fairly and openly, and all the facts are known to both, he may recover commissions from both. A broker is regarded as a " middleman," and not as an agent in whom peculiar trust and confidence are placed. These cases often arise in exchanges of properties, where several brokers are employed separately to sell the same property, and each separately calls attention of a purchaser to it ; the one first effecting the sale is entitled to commission, and the others are not. If the broker becomes

the purchaser, or is a shareholder in a company which purchases, he is not entitled to commissions; such conduct could not be said to be in good faith; even if he offer himself as purchaser, alone or with another, it must be clearly shown that in such case the owner agreed that he should have a commission. If his clerk buy the real estate, he will be held as trustee for his principal. If a broker's contract is to produce a purchaser, it is no part of his duty to negotiate the sale. If employed to secure a loan, the broker has a lien on the money secured for his commissions. If by statute a license is required, and he have no license, the broker cannot recover. Broker's fees fixed by statute cannot be enlarged by contract. This article is by Wm. Thornton, and is very full of citation, as well as liberal quotation of authority (26 *Am. L. Reg. N. S.* 545. See also a valuable article on this subject in *Id.* 106, 109).

## Set-off against Undisclosed Principal.

In the notes of cases, prepared, we believe, by FREDERICK POLLOCK, in the current number of the *Law Quarterly Review*, July, 1887, vol. 3, p. 358, the principle of contract with an agency is thus discussed:

"Cooke *v.* Eshelby (12 *App. Cas.* 271), is a case which excites comment. It determines that where an agent sells goods for an undisclosed principal and afterwards the principal sues the buyer for the price of the goods, the buyer cannot set off a debt due from the agent, unless he, owing to the action of the principal, positively believed at the moment when the contract was made that the agent was selling on his own account. The rule we conceive has hitherto been supposed to have been correctly stated in the following passage taken from *Dicey on Parties to an Action*, 142, 143:—' T. [a third party] contracts with A., the agent of P., under circumstances which make it possible for an action to be brought either by P. [the principal] or by A. An action is brought by P. T. can set off against a debt claimed by P., any debts due from P. to T. If T. supposed A. to be contracting as principal, he can also set off debts due from A. to T. If T. knew that A. was contracting as an agent, even though T. did not know that he was contracting as an agent of P., and *a fortiori* if T. knew that A. was contracting as agent of P. T. cannot set off debts due from A. to him. The House of Lords now in effect adds that T. cannot set off such debts if he had no belief whether A. was an agent or not.' No doubt this may be a legitimate deduction from the decided cases. Its weak point is that it carries a step further the results of an anomaly. The plain truth ought never to be forgotten that the whole law as to the rights and liabilities of an undisclosed principal is inconsistent with the elementary doctrines of the law of contract. The right of one person to sue another on a contract not really made with the person suing is unknown to every other legal system.

except that of England and America. It rests originally on a sort of common law equity, and originates in the feeling that a principal who had got the advantage of a purchase ought to pay for it if the agent to whom the seller really trusted was not able to do so. Whether it was not from the first a mistake to suppose that the rights of a principal must of necessity be correlative to his liabilities is a question of some speculative interest. It is still more doubtful whether it be not inadvisable to extend by a process of judicial logic analogous rights which ought rather to be lessened than increased " (*Daily Register;* and see note to Daly *v.* Monroe, *ante,* p. 162).