EMIL HEINEMANN et al., Appellants, *v.* JOHN HEARD et al., Respondents.

It is not necessary to show fraud, upon the part of an agent, in order to maintain an action against him for neglecting to perform a duty which he has undertaken. An agent is bound, not only to good faith, but to reasonable diligence, and to such skill as is ordinarily possessed by persons of common capacity engaged in the same business.

Plaintiffs sent to defendants, their correspondents in China, an order to invest £5,000 in silk, of one or the other of several specified descriptions, at prices named, and in accordance with the terms of a letter of credit which required bills to be drawn prior to July 1st. Defendants did not comply with the order; and in answer to plaintiffs' complaints wrote, admitting that the silk could have been purchased within the prescribed prices, but stating, as an excuse for not purchasing, that they expected prices to be lower, and therefore, waited until the prices advanced beyond their limits, and expressing regret at their erroneous judgment. *Held*, that the order gave defendants no discretion, save as to the selection of the silk. That it was their duty to have selected some of the descriptions specified, if they were to be obtained, in time to ship under the letter of credit. That defendants' letter was an admission of their ability to have executed the order, which, although it did not preclude them from showing any impediment preventing performance, yet was sufficient to require the submission of that question to a jury.

The rule of damages in cases of marine trespass (*i. e.*, the precise cost or value of the article at the time of the loss, with interest) is not applicable to the case of the violation of a contract entered into for the express purpose of procuring goods for sale at their place of destination. A loss of profits, the direct consequence of the breach, if within the contemplation of the parties at the time of making the contract, and if not speculative or contingent, may be recovered. (RAPALLO, J.)

(Argued May 22, 1872; decided June 20, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of defendants entered upon an order of the court at circuit directing a dismissal of the complaint. (Reported below, 58 Barb., 524.)

This action was brought to recover damages for an alleged breach of duty, upon the part of defendants, as plaintiffs' agent.

The plaintiffs are copartners, carrying on business in the city of New York under the firm name of Heinemann & Payson.

The defendants are commission merchants and copartners, carrying on that business at Hong Kong and elsewhere in China, under the firm name of Augustine Heard & Co.

In the year 1864 an arrangement was entered into between the plaintiffs and defendants, by which the latter were to become the correspondents of the former for the purchase of teas and silks in China for account of the plaintiffs.

In order to put the defendants in funds for the purchase of teas and silks, a credit in favor of the defendants, with George Peabody & Co., of London, for £15,000 sterling, was obtained by plaintiffs. The plaintiffs gave the defendants their first instructions to purchase by a letter dated the 23d December, 1864, addressed to the defendants at Hong Kong. It directed the investment of £5,000 in No. 1 re-reeled silk (if possible, all white), at 18s. sterling for Cumchuck, or at 16s. sterling for No. 1 Loong Kong or Kow Kong, free on board; and £10,000 sterling in fair cargo Foochow Oolongs, at a price not exceeding 9d. (say 9d. sterling) per pound. These instructions were modified by a letter dated May 2d, 1865, in these respects, namely: The limit of price for silk was increased five per cent; and for the Oolongs the defendants were authorized to substitute fine Moyune teas from Canton or Shanghai, the usual assortment of fully fair cargo, at a price of 1s. 7d. per pound sterling, free on board, without freight and insurance; for the Ting Tai, 2d. per pound higher.

The first letter was received on the 22d February, 1865, and the second on the 7th July, 1865. By its original terms the bills were to be drawn prior to the 1st July, 1865; the time was extended to September 1st. The defendants were notified of the extension by the plaintiffs' letter of May 12th, which notice was received by the defendants on the 6th July, 1865. No purchases were made by the defendants for the plaintiffs under these orders, nor any part of the credit used.

At this time there was a certain joint account arrangement

on foot between the plaintiffs and the defendants, and the plaintiffs, in a letter dated June 6th, 1865, advised the defendants as follows: "Any amount unused of our first credit of £15,000 you may apply for the benefit of the joint account arrangement."

This letter was received August 8th, 1865 ; no part of the credit, however, was applied. Other facts appear in the opinion.

*W. W. Macfarland* for the appellants. Defendants impliedly undertook to execute plaintiffs' orders with due diligence, and were not at liberty to exercise a discretion. (*Entwish* v. *Dent,* 1 Exch., 811 ; *Guerreiso* v. *Peile,* 3 B. & Ald., 616 ; *Harmer* v. *Cornelius,* 5 Com. B. [N. S.], 236 ; Smith's Mercantile Law, 7th ed., 113 ; *Coggs* v. *Bernard,* and notes, 1 Smith's Lea. Cases, 5th ed., pp. 334, 335 ; *Courcier* v. *Ritter,* 4 Wash., 549, and notes, ; 1 Am. Lea. Cases, 4th ed., 687 ; *Bell* v. *Cunningham,* 5 Mason, 161 ; *Same Case,* 3 Pet., 69. ; Smith's Mercantile Law, 113.) The court erred in granting a nonsuit. (*Knickerbocker, etc., Co.* v. *Anderson,* 2 Vroome [N. J.], 333 ; *N. Y., etc., Insurance Co.* v. *Graham,* 2 Duvall, [Ky.], 506 ; *Clark* v. *First, etc., Society,* 45 N. H., 331 ; *Flemming* v. *Smith,* 44 Barb., 554 ; *Scarritt* v. *Carruthers,* 29 Ill., 487 ; *Johnson* v. *Hamburger,* 13 Wis., 175 ; *Barbey* v. *Laws,* 15 Ind., 109 ; *Mackay* v. *N. Y. Central R. R. Co.,* 27 Barb., 528 ; *McDaniel* v. *Parks,* 19 Ark., 671 ; *Milo* v. *Gardner,* 41 Maine, 549 ; *Lindsay* v. *Whalen,* 17 Ark., 385 ; *Abernethy* v. *Wayne Co. Bank,* 5 Ohio [N. S.], 256 ; *McCattrick* v. *Wasson,* 4 id., 566 ; *Wendell* v. *Moulton,* 6 Foster [N. H.], 41 ; *Gould* v. *White,* 6 id., 178 ; *Babcock* v. *Porter,* 20 Conn., 570 ; *Bishop* v. *Firkens,* 19 Conn., 300 ; *Wendell* v. *Safford,* 12 N. H., 171 ; *Ways* v. *Collinson,* 6 Leigh, 230 ; *Medlar* v. *State,* 26 Ind., 171 ; *State* v. *Burnside,* 37 Mo., 343 ; *Gaines* v. *Forcheimer,* 9 Fla., 265 ; *Bloom* v. *Crane,* 24 Ill., 48 ; *Dart* v. *Farmers' Bank,* 27 Barb., 337 ; *Clark* v. *Whittaker,* 19 Ct., 319 ; *Chicago, etc., Railroad Co.* v. *Northern Ill., etc., Company,* 36 Ill., 60 ; *Hopper* v. *Jones,*

29 Cal., 18; *Lewis* v. *Blake*, 10 Bosw., 198; *Rowe* v. *Smith*, id., 268; *Ammons* v. *State*, 9 Fla., 530; *Brockman* v. *Berryhill*, 16 Iowa, 183; *Brown* v. *Jefferson*, 6 Iowa, 339; *Edminston* v. *Garrison*, 18 Wis., 594; *Munes* v. *Carter*, *Law Reports*, 1 Privy Cl., 530; *Lubeck* v. *Bullock*, 24 Cal., 338; *People* v. *Townsend*, 37 Barb., 520; *Breese* v. *State*, 12 Iowa, 146; *Lisbon* v. *Bath*, 3 Foster [N. H.], 1; *Fowler* v. *Waldrit*, 10 Georgia, 250; *Allen* v. *Jarvis*, 20 Conn., 38; *Flemming* v. *Hollindike*, 7 Barb., 271; *McDonald* v. *Edgerton*, 5 id., 560; *Johnson* v. *Winona, etc., R. R. Co.*, 11 Minn., 296; *Tolman* v. *Race*, 36 Ill., 472; *Brainerd* v. *Van Curen*, 22 Iowa, 261; *McDuffy* v. *Stewart*, 30 Georgia, 661; *Raguel* v. *Dessure*, 30 id., 690; *Chicago, etc., R. R. Co.* v. *Hutchins*, 34 Ill., 108; *Haralich* v. *Haralich*, 18 Iowa, 414; *James* v. *Baker*, 49 Maine, 427; *McKay* v. *Thorington*, 15 Iowa, 25; *Gordon* v. *Coleman*, 48 Maine, 473; *Housatonic R. R Co.* v. *Noles*, 30 Conn., 313; *Bolton* v. *Howell*, 18 Ind., 181; *People* v. *Vance*, 21 Cal., 400; *Hall* v. *Hunter*, 4 Green, [Iowa], 539; *Smith* v. *Tiffany*, 36 Barb.; 24; *Heritage* v. *Hall*, 33 id., 347; *Gallop* v. *Smith*, 24 Ill., 586; *Purvis* v. *Coleman*, 1 Bosw., 321; *Derwort* v. *Loomer*, 21 Ct., 245; *Haight* v. *Turner*, 21 id., 593; *Swartzer* v. *Rogers*, 3 Kansas; 374; *Craft* v. *State*, 3 id., 450; *Welch* v. *Bogg*, 12 Mich., 241; *Chapman* v. *Read*, 18 Ind., 272; *Tracy* v. *Hartman*, 1 Hilton [N. Y. C. P.], 350; *Waters* v. *Bristol*, 26 Ct., 398; *Walf* v. *State*, 11 Ind., 231; *Erben* v. *Lorillard*, 23 Barb., 82; *Weld* v. *Chadborn*, 37 Maine, 221; *Wilkinson* v. *Corwell*, 1 Curtis [Ct. Ct.], 63; *Holman* v. *Dord*, 12 Barb., 336; *Hogen* v. *Henry*, 1 Eng., 86; *Goodman* v. *Smith*, 4 Der., 450.)

*E. W. Stoughton* for the respondents. If the evidence is not contradictory, and on the plaintiffs' proofs they have no right to recover, there is nothing to be left to the jury, and it is the duty of the court to grant a nonsuit. (*Carpenter* v. *Smith*, 10 Barb., 664; *Bidwell* v. *Lamnet*, 17 How., 359; *Ernst* v. *H. R. R. Co.*, 24 How., 103; *Steward* v. *Simpson*,

1 Wend., 376; 3 Hill, 287; 7 id., 329.) Upon the allegations and proofs of the plaintiffs, no verdict for any damages could have been sustained. (Story on Agency, § 220; *Bell* v. *Cunningham*, 5 Mason, 161; *Same*, 3 Peters, 69, 84, 85; *Schooner Lively*, 1 Gallison, 325; *Griffin* v. *Colver et al.*, 16 N. Y., 491.)

RAPALLO, J.  In so far as the plaintiffs' cause of action is founded upon the failure of the defendants to fill the plaintiffs' order for teas, we concur in the opinion of the court below that a case was not made out, sufficient to have been submitted to the jury.  The original order was for Oolongs; but it appears that these could not have been purchased at the plaintiffs' limits.  By their letter of May 2, 1865, the plaintiffs authorized the substitution of "Fine Moyune teas, the usual assortment of fully Fair Cargo."  The plaintiffs' witnesses agree that this order was ambiguous; as "Fine Moyune" and "Fair Cargo" denote different grades; the "Fine" being a superior grade to "Fair Cargo;" and some of them testify, without contradiction, that the order would be understood by the trade as calling for "Fine" Moyune.  There is no evidence establishing that this grade could have been purchased in conformity with the order.  The evidence in relation to the invoices of Moyune teas which arrived at this port not only fails to show that they were Fine Moyune, but establishes that they did not come under that designation. As to this branch of the case, therefore, the nonsuit was properly granted.

But a very different case is presented in respect to the order for silk.  By their letter of December 14, 1865, the defendants undertook to explain their omission to execute the order, and to answer the loud complaints in that respect contained in the plaintiffs' letters of September 26 and October 3, 10 and 12.  In this letter of December 14, the defendants admit that they might have purchased the silk in June at $480 to $500 per picul (the plaintiffs' limit being a fraction over $525); and they give their reason for not having

done so.   They do not claim that there was any difficulty in obtaining silk of the quality ordered, or in procuring its shipment in time to enable them to draw for the price under the letter of credit.   The only reason they assign for the non-fulfillment of the order is that they thought it best to delay purchases in the hope of a still further decline in the price, from causes which they mention; and that in this hope they waited till after the first of July, when news arrived from Europe which advanced the rate.   They state this to have been the reason which prevented their action while action was possible; and, in answer to plaintiffs' complaints in respect to their omission to keep them advised, they state that they delayed writing while they still hoped for a chance to buy; and that their feeling of annoyance at having been led to a wrong decision must be their excuse for not having done so later.   They admit that they erred, but claim that they did so from a reasonable hope of doing better for the plaintiffs than their instructions.

Without regard to the other evidence in the case in support of the plaintiffs' claim, we think that, on the question of the ability of the defendants to have executed the order for the silk, this letter was sufficient to have required the submission of that question to the jury.   The defendants were in a position to have better knowledge of the facts than any other person; and the jury would have been authorized to regard this letter as an admission that the only excuse the defendants had for not having executed the order was that they waited in the hope of buying on much more advantageous terms than the plaintiffs had directed; and, in that case, the only question remaining would have been as to the sufficiency of the excuse, in connection with the explanations given, and the facts appearing on the trial.

The letters, to which that of the 14th of December was an answer, were such as to call upon the defendants for the best reasons they could give for their failure to fill the order.   If they made proper efforts and met with obstacles, or if they could not obtain the necessary facilities for shipment, those

facts must have been within their knowledge; and it cannot be supposed that, under the circumstances, they would have been content to assign, as their only excuse, an admitted error of judgment, had facts existed showing that they were not in fault, and that it was out of their power to have performed the duty they had undertaken. Their omission to state any such facts, and their concession that they had erred in not executing the order, might fairly be regarded as implying an admission that they could have executed it had they not voluntarily refrained. (See *Entwisle* v. *Dent*, 1 Exch., 823.)

This admission was not conclusive upon the defendants, and would not preclude them from showing any impediment which may have existed to the execution of the order, such as the absence of any vessel in which to make the shipment, or their inability, notwithstanding diligent efforts, to find the required qualities or procure the silk to be re-reeled in time to be shipped and drawn against under the letter of credit. But it made a *prima facie* case for the plaintiffs in those respects, and relieved them from the necessity of going into proof as to those facts in the first instance.

The plaintiffs, however, did not repose wholly upon the letter of December 14, but introduced proofs upon these several points; and it is claimed, on the part of the respondents, that these proofs not only fail to show that the order for silks could have been executed, but, on the contrary, establish that it was impracticable.

Unless the latter proposition can be maintained the effect of the admission, inferable from the letter of December 14, is not destroyed. But a careful review of the evidence satisfies us that it is not inconsistent with the positions claimed by the plaintiffs, but tends to support their allegations. There is some conflict between the witnesses as to the time necessary to obtain the silk for shipment; but on the question of the propriety of a nonsuit, the plaintiff is entitled to the benefit of such of the testimony as is most favorable to him, and to the most favorable construction of that testimony. Viewed

in that manner, it establishes the fact that, from about the 10th, and, as one witness states, from the 5th, of June, the price of silk of the quality ordered was from $480 to $500 per picul; and that during the month of June a much larger quantity than that ordered by the plaintiffs was sold at those prices. The evidence taken on commission speaks of the period of greatest depression, but does not show the price paid to 10th or the 5th of June, except that one witness states that on the 20th of June he delivered thirty boxes at $500 per picul, under a contract for delivery in three weeks, on order about four weeks previously. This testimony also shows that the time necessary for re-reeling and preparing silk for shipment varied according to the amount ordered. One witness states that the usual time, consumed between the dates of making contracts for such silk and obtaining possession of it ready for shipment, was three or four weeks for 100 boxes if ordered from one man. Another, that the usual time was three weeks. Another, that the usual time was three weeks for 150 boxes if contracted for from one dealer only. The quantity ordered by the plaintiffs was about 120 boxes, or forty-five piculs. No witness states that it could not be procured in less time if ordered in smaller lots from different dealers. They speak of the amount one dealer could produce in three weeks or a month. The witness who testifies to the longest time as being necessary, testifies that his own firm obtained 37½ piculs, which was nearly the amount required by the plaintiffs, at $482.50; that it was contracted for on the 13th of June and actually delivered on the 26th of June.

Neither does the evidence show that the shipment was impracticable for want of a vessel. In their circular of 27th June the defendants mention at least one vessel, the Thorkeld, then loading for New York. They say she was then full; but this does not show that, with proper diligence, they could not have secured room in her before that time. She appears to have sailed on the 1st July, and to have arrived at New York on the 11th of December, her cargo having been sold to arrive.

The question in the case was one of due diligence, and we think that there was sufficient evidence to go to the jury on that point. The position cannot be maintained that fraud on the part of the agent is necessary to subject him to an action for neglecting to perform a duty which he has undertaken. An agent is bound not only to good faith but to reasonable diligence, and to such skill as is ordinarily possessed by persons of common capacity engaged in the same business. (Story on Agency, §§ 183, 186.) Whether or not he has exercised such skill and diligence is usually a question of fact; but its omission is equally a breach of his obligation and injurious to his principal, whether it be the result of inattention or incapacity, or of an intent to defraud. In the case of *Entwisle* v. *Dent* (1 Exch., 822) there was an element of fraud as well as breach of duty; but the judgment of the court was not founded upon the fraud, nor could it be, as the action was for breach of the implied contract of the defendant to act according to instructions.

As an independent ground for sustaining the nonsuit, it is claimed, on the part of the defendants, that the order to purchase silk was discretionary, and that for that reason they are not responsible in damages for their failure to execute it.

By reference to the letter of December 23, 1864, it will be seen that no discretion was given whether or not to purchase. The order to invest £5,000 in silk of one or other of the particular descriptions mentioned, and at the prices named, was absolute. The only matter left to the discretion of the defendants was the selection of the silks as well as the teas. They were instructed to purchase either Cumchuck at 18*s.*, or No. 1 Loo Kong, or Kow Kong, at 16*s.*, and were requested to obtain all white if possible; otherwise, to separate the white from the yellow. No other matters were left to their discretion. It was their duty to select some of these descriptions, if they were to be obtained, and to use reasonable diligence in obtaining the required quantity in time to ship under the letter of credit. It is argued that as they had discretion in the selection of the silks, and had to determine whether it

was possible to obtain all white, no period can be fixed as the time when they were bound to decide these matters and make the purchase. This argument is not satisfactory. The necessity of making a selection may have justified them in not accepting the first offer which they may have met with, and in looking further for the purpose of complying with the wishes of their correspondents; but it would not justify them in allowing all opportunities to pass, and the time to elapse within which they could purchase under the letter of credit. They were bound to make a selection within a reasonable time, and, at all events, before the time for shipping, under the credit, expired. The prices appear to have continued below their limit from the early part of June until the first term of the letter of credit had run out; yet they allowed all that time to elapse without making any selection. Such delay was certainly evidence of a want of due skill and diligence, if attributable merely to a failure to come to a decision.

But the defendants do not, in their correspondence, take any such ground, or claim that they regarded themselves as having any discretion as to purchasing the silks and tea. On the contrary, in their letter of February 27, 1866, they say: " We were bound to follow your instructions for the investment of the £15,000 credit first sent, and have already explained to you our reasons for not having purchased silk;" referring to their letter of December 14, 1865. They rest their justification wholly upon the ground that while the silks were below the plaintiffs' limits they held off in the attempt to obtain them at still lower prices. They were scarcely justified, however, in persisting in this attempt until it became too late to ship under the letter of credit as originally drawn or as extended.

The letter, authorizing the application of the unused portion of the £15,000 credit to the joint account transactions, did not reach the defendants till August 7, 1865, and constituted no excuse for any default occurring before that date.

It is urged that no damage was shown, and, therefore, the

nonsuit should be sustained.   Even if no special damage had been proven the complaint should not have been dismissed. The breach of a contract, or of a duty arising from a contract, is sufficient to entitle a plaintiff to maintain his action, and to render a nonsuit improper.   (1 B. & Ald., 415; 3 Adol. & Ell. [N. S.], 516.)   But the plaintiffs had introduced proofs, without objection, showing the market price of the silks at New York during the months of September, October, November and December, 1865, and the prices at which they could have been sold to arrive.   It is not necessary now to decide what is the proper rule of damages; but we are not prepared to sanction the idea that the rule adopted in cases of marine trespass (which is the prime cost or value of the property at the time of the loss, with interest [3 Wheat., 560]) is necessarily applicable to the case of the violation of a contract, entered into for the express purpose of procuring goods for sale at their place of destination, when their market value at that place can be shown.   The fact that damages have been sustained must be proved with reasonable certainty; but even a loss of profits, if within the contemplation of the parties at the time of entering into the contract, and a direct consequence of the breach, and not speculative or contingent, may be recoverable.   (*Griffin* v. *Colver*, 16 N. Y., 494, 495; *Masterton* v. *The Mayor*, 7 Hill, 61; *Cunningham* v. *Bell*, 5 Mason, 172; 3 Peters, 85.)   The certainty of the loss claimed must depend upon the evidence; but to apply to such contracts the rules settled in cases of capture and collision would, in the generality of cases, exempt foreign agents from all responsibility for breaches of their contracts with, or violation of their duty to, their principals in respect to the purchase and shipment of goods, whether arising from negligence or fraud.

It is enough, at the present stage of the case, to say that the evidence on the subject of damages was received without objection, and that the nonsuit was not moved for, or granted on the ground of any defect of proof in this respect, but on the sole ground that the plaintiffs had not given any evidence

of their alleged cause of action sufficient to go to the jury. We think they have shown enough in respect to the silk to put the defendants to their defence, and that the judgment should therefore be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.