EMIL HEINEMAN AND ANOTHER, RESPONDENTS, *v.* JOHN HEARD AND OTHERS, APPELLANTS.

*Examination of witness on commission — Answer of witness to interrogatory — when may be excluded — Order to buy goods — failure to comply with — damages for — how measured.*

A witness was examined by commission, as to the times at which certain varieties of silk could have been obtained at a given price, and answered the question, stating what he knew on the subject. To the general interrogatory, "If you know any other matter or thing concerning the matters hereinbefore inquired about, declare the same as fully and minutely as if you had been particularly interrogated thereto," he proceeded to state what he thought in reference to the time when the contracts were made for the silk, and certain inferences or conclusions of his, on the subject. *Held*, that the answer was properly excluded.

This action was brought to recover damages for a failure on the part of the defendants, to comply with an order given by the plaintiffs, requiring them to purchase silks in China, and ship them to New York. At the trial the defendants' counsel requested the court to charge, that the defendants were not liable, unless they could, with reasonable diligence, have shipped the silks by a certain sailing vessel, shown to have arrived in this country; and that in any event they were only liable for the difference between the cash, market value, at the time of arrival here of such ship as it is shown could have brought such merchandise under the terms of the order, and the cost of so much only of such merchandise as should have come by that particular ship. *Held*, that the court properly refused so to charge. The plaintiffs were not obliged to show that a certain vessel, shown to have arrived in this country, could have been obtained to carry the silk. It was enough for them to show that a vessel or vessels were loading in China ports, bound for this country, in which, or in any one of which, the defendants, with proper diligence, could have obtained freight for the silk. The court instructed the jury that the proper measure of damages was the difference between the cost of the silk laid down in New York, and its market value there at the time it would have arrived in the usual course of trade. *Held*, that this was correct. A loss of profits, within the contemplation of the parties at the time of entering into the contract, and a direct consequence of the breach, and not speculative or contingent, may be recovered.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury.

The plaintiffs are merchants, carrying on business in the city of New York, and the defendants are engaged in business in China.

This action was brought to recover damages for a failure, on the part of the defendants, to purchase and ship certain silks, in accord-

ance with instructions sent to them by the plaintiffs. The goods were to have been purchased and shipped before September 1st, 1865. In a letter written to the plaintiffs, dated December 14, 1865, the defendants admitted that they might have purchased the silk at a price within the limit fixed by the plaintiffs, and did not claim that there was any difficulty in obtaining silk of the kind required, or in procuring its shipment in time to enable them to draw for the price, under the letter of credit furnished by the plaintiffs. The only reason they assigned for the non-fulfillment of the order, was, that they thought it best to delay purchases, in the hope of a still further decline in the price.

The case has been already passed upon by the General Term and Court of Appeals. The decision of the General Term is reported in 58 Barbour, 524, and that of the Court of Appeals in 50 New York, at page 27, where the facts of the case are fully stated.

*E. W. Stoughton, John E. Ward* and *William S. Dexter*, for the appellants. That the plaintiffs could only recover nominal damages. (Story on Agency, § 220; *Cunningham* v. *Bell*, 5 Mason, 161; id., 3 Peters, 69; *Schooner Lively*, 1 Gallison, 325; *Griffin* v. *Colver*, 16 N. Y., 491.)

*W. W. Macfarland*, for the respondent. That the measure of damages adopted by the court was proper. (*Griffin* v. *Colver*, 16 N. Y., 489; *Hadley* v. *Baxendale*, 9 Exch., 346; *Borries* v. *Hutchinson*, 11 Jur. [N. S.], 267; *Masterton* v. *The Mayor*, 7 Hill, 62; *Waters* v. *Towers*, 8 Exch., 401; *Bracket* v. *McNair*, 14 John., 170; *Lowenstein* v. *Chappell*, 30 Barb., 241; *Clark* v. *The Mayor*, 3 id., 288; *Shepard* v. *Milwaukie Gas-Light Co*, 15 Wis., 318; *Hamilton* v. *McPherson*, 28 N. Y., 72.)

BRADY, J.:

The defendants have not denied their obligations to make a purchase of the silk for which orders were given by the plaintiffs and accepted by them. They have assumed only to interpret these orders as investing them with a discretion, and thus to limit the effect of their engagement. The purchases were, by the original understanding, to be made, and the goods shipped, not later than

the 1st July, 1865. The letter of credit, authorizing the defendants to draw for the amount to be expended by them, provided that their bills must be drawn in China, prior to the 1st July, 1865, and advice thereof given in duplicate, such advice to be accompanied by bill of lading filled up to order. The time of performance was subsequently extended to the 1st of September, 1865, the result of a correspondence between the parties. On the trial, it was claimed that the defendants had abundant opportunity to buy the silk desired, and within the limited price, both before the first July and the first September, and that freight for it could have been obtained, also, prior to the first July, under the original order, and prior to the first September under the extension mentioned. The ruling evidence in favor of the first claim, was the letter of the defendants, dated the 14th December, 1865, in which it is confessed by them that they could have made the purchases within the prescribed limit, but assigning the reasons why they were not made. This letter was the subject of consideration by the Court of Appeals, when the judgment heretofore entered on a dismissal of the complaint, was reviewed. The nature of the engagement made by the defendants to purchase, and the character of the orders given them, whether conferring discretion or not, were also the subject of examination and of interpretation, and it was determined in reference to the latter, that they were not justified in allowing the opportunities to pass, and the time to elapse, within which they could purchase under the letter of credit, although they might, in making the selection, have refused the first offer made to them, or the first lot of silk discovered. The letter of the fourteenth of December, was held to have established a *prima facie* case for the plaintiffs, on the subject of the defendants' ability to fulfill the orders of the plaintiffs, both as to the purchase of the silk, and its shipping within the time designated — that is, prior to the 1st July, 1865 — but it was also declared, that the admissions contained in it were not conclusive, and would not preclude them from showing any impediment which might have existed to the execution of the order, such as the absence of any vessel, in which to make the shipment, or their inability, notwithstanding diligent efforts to find the required qualities, or procure the silk to be re-reeled, in time to be shipped and drawn against, under the letter of credit. The defendants,

upon the second trial, which, with its incidents, is now under review, enlarging their excuse or defense, as they claim, only partially stated in the letter of the fourteenth of December, attempted to show that there was no vessel in which, if the silk had been purchased, it could have been shipped on or before the 1st July, 1865, and that it could not be purchased under the subsequent limit, and thus to answer completely the charge of negligence or failure of duty in omitting to obey their instructions. The questions thus arising both upon their ability to purchase the silk and to obtain freight for it, were submitted to the jury, and by them disposed of on the evidence, adversely to the defendants. There were no exceptions taken to the charge of the presiding judge. The rules by which the jury were to be governed in their deliberations, were fully and fairly stated. The respective rights and obligations of the parties, and their relation to each other, were explained, and the nature and extent of the defendants' contract, and their duties under it, clearly laid down. Of the many requests to charge, a few only were refused, but whether the refusals were warranted or not, it becomes, it is true, our province to declare. This duty is not burdensome, because, when this case, on appeal from the judgment rendered on a former trial, was reviewed by the Court of Appeals, as suggested,[*] all the questions involved, except perhaps the rule of damages, were passed upon and settled. The case was remitted for trial, to ascertain and to determine the facts in regard to the controversy, whether conceded or disputed, and thus to enable the defendants to relieve themselves of the effect of the admissions contained in the letter of the 14th December, 1865, by proof of proper efforts by them to execute the orders given, and of the existence of obstacles or impediments preventing it, whatever such obstacles or impediments might have been. The evidence on both sides is now before us. It is insisted, nevertheless, that errors committed in the admission and exclusion of evidence, and in the refusals of the court to charge certain propositions, submitted on the part of the defendants, entitle them to a reversal of the judgment appealed from. It appears, however, that all of the evidence admitted against the defendants' exceptions, relates to the arrival of vessels at the port of New York, and the

[*] See 50 N. Y., 27.

price of silks in the months of September, October and November, in the year 1865, and the months of January and February, 1866; and these exceptions mentioned, are based upon the proposition, that no other than nominal damages could be recovered. If, in the determination of this appeal, therefore, that proposition be not maintained, they are of no value. It will be hereafter considered. The only remaining exception to evidence, relates to the refusal of the presiding judge, to permit the defendants to read a portion of the answer of a witness (Hitchcock), given to the general interrogatory,— " If you know any other matter or thing concerning the matters hereinbefore inquired about, declare the same as fully and minutely as if you had been particularly interrogated thereto." The witness had been asked, at what time or times, between February 23, 1865, and July 1, 1865, and between July 6, 1865, and September 1, 1865, re-reeled silk of the kinds known as Cumchuck, Loong-kong or Kowkong, or any of them, and which of them, could have been obtained for, at, or under $525 per picul, and he had answered the question, stating what he knew on the subjects to which it related. When the general interrogatory was asked, he proceeded to state what he thought in reference to the time when the contracts were made for the silk, and also certain inferences or conclusions of his on the subject, and thus to give an opinion which was not sought. He had no authority for this procedure. He was asked to state what he knew, and not for his opinions, inferences, or conclusions from facts and circumstances, or either. The exclusion of the answer was therefore proper.

This summary brings us at once to the consideration of the requests made and refused, and they will be taken up in the order in which they were presented on the points. The first is as follows : That it had been affirmatively proven, that there was no vessel in which defendants could have shipped silk from China to an Atlantic port in the United States, even if they could have obtained the same under the said order of December twenty-third, prior to July 1, 1865, by reason whereof, the plaintiffs failed to establish negligence of the defendants, because of their failure to purchase and ship the same prior to that date. The answer to this is, that the Court of Appeals having declared a *prima facie* case to have

been established, upon evidence similar to that given on this trial, it became the duty of the court to submit the question involved in the request, to the determination of the jury. The letter of the defendants, of the fourteenth December, contained no statement of their inability to procure freight, and their silence is easily understood. They had failed to purchase the silk, and having done so, there was no occasion to seek a ship for any purpose connected with it. The inference and conclusion, therefore, may be fairly drawn, that they did not do so, not only from the fact stated, but from the absence of all proof on their behalf, that they sought to ascertain whether a place could be obtained for such freight, as the bulk of silk properly packed would create. It must be further said, that there were at least three vessels loading, the Thorkeld, Benefactor and Nordstern, in which the defendants, if they had the silk, might, by proper diligence, have obtained freight. It is true that the defendants state that they applied for freight in the Thorkeld and it was refused, but it does not appear what kind of freight was mentioned, or its bulk or amount. It is true, also, that it appears from the statement of Mr. Taylor, that the Nordstern and Benefactor were engaged exclusively by his firm, and would not take outside freights, but this testimony is a negative statement of what would have been the course of his firm in the past on the subject, when, with proper inducements, they might have accepted the silks for transportation in one or both of their ships. It is by no means conclusive evidence that, at the time the vessels were loading, the defendants might not have obtained freight in one or both of them. But there is in the case still more than this. In the circular of the defendants, dated 28th June, 1865, they say: "Freight still continues very weak, with no prospect of improvement;" and, after mentioning several vessels on berth for London, say also: "The Thorkeld is engaged full for New York, having taken *a small quantity of outside freight.*" These various elements of the plaintiff's case made it imperative upon the court to submit the question to the jury. If they believed the evidence of the defendants, who testified as stated, then their duty was plain, but on the case as presented, they were not bound to do so, and hence the necessity of leaving the question to them. The court, by the request, was asked to consider the apparent infirmities created by the letter of

the fourteenth December, the evidence of the presence of the vessels referred to, and the additional statements of the defendants, to reconcile them, or to draw a conclusion from them all, and thus usurp the province of the jury.

This request was not granted, and it is very clear that the ruling was entirely correct. The second request was as follows: "The burden of proof is upon the plaintiffs, to establish that the defendants were guilty of negligence, in failing to perform this duty ; and, to establish such negligence, they must affirmatively prove, not only that the defendant might have purchased the said silks at the price, and of the quality mentioned in said letter of December twenty-third, and have shipped the same, and obtained bills of lading therefor prior to the 1st day of July, 1865, but that their failure so to do was the result of negligence, and of the absence of that care, diligence and skill, which is ordinarily possessed by persons of common capacity, engaged in the same business." The court properly refused this, and the views expressed in regard to the request already considered, apply here. The proof given on behalf of the plaintiffs, having established a *prima facie* case, resting, as it did, on the confessions of the defendants, in the letter of the fourteenth of December, the burden was shifted by it to the defendants, as the judge properly charged in connection with that request, and it became their duty, therefore, if they wished to avoid the consequences of their neglect, to satisfy the jury of their diligence and good faith. The jury were, however, instructed that, if they found that there was an opportunity for the defendants to have had the contracts made, and to have obtained the silk, and to have had it shipped by the first of July, then they were guilty of negligence ; otherwise they were not guilty under the limit of that date, and thus, in effect, though not in terms, perhaps, the request was granted, substantially. The defendants also asked the presiding judge to charge, that the plaintiffs had failed to show that the defendants were guilty of negligence, in failing to purchase and ship silks prior to July 1, 1865, or after such date and prior to September first, in accordance with the terms of the letter of December 23, 1864, or May 2, 1865, and this was properly refused. It required the court to take the whole case from the jury, and to decide the disputed questions of

fact. It was also double in substance, and in propositions, one of them being a repetition of the first request considered herein, relating to the limit of the first July, and already shown to be untenable, and for that reason could not be entertained. The defendants further requested the court to charge that : To entitle the plaintiffs to any damages, the jury must be satisfied that the defendants could, with reasonable diligence, and in the ordinary course of business, have contracted for, got into possession of, and shipped by a certain sailing vessel, *shown to have arrived in this country,* the merchandise ordered within the plaintiffs' limits, in accordance with the terms of such one of the letters of credit as was in force at the time when they should have so acted. And again : If the jury should be satisfied that, in respect to any of the merchandise ordered, the defendants were guilty of negligence, they are not liable in any event for more than the difference between the cash, market value, at the time of arrival here of such ship, *as it is shown could have brought such merchandise under the terms of the letter of credit,* and the cost of so much only of such merchandise as should have come by that particular ship. The proposition involved in these requests, is not that the plaintiffs are not entitled to the difference between the cost of the silk and the cash market value here, but that this rule of damages cannot be applied, save on proof that a certain sailing vessel which could have brought it under the terms of the letter of credit, arrived in this country, and then only to so much of the silk as might have come by that particular ship. This is not an effort to have this case governed by the rules of law relating to a marine trespass. It is an attempt to establish the necessity of a strict line of proof, for which there is no precedent, and which seems to be altogether too exacting. It would throw the burden upon the plaintiffs, of proving that a certain vessel, shown to have arrived in this country, could have been obtained to carry the silk, and could have brought it under the terms of the letter of credit. They were not under obligations to do so. It was enough for them to show that a vessel or vessels were loading in China ports, bound for this country, in which, or in any one of which, the defendants, with proper diligence, could have obtained freight for the silk. This element of their case was complete, *prima facie,* with proof that

a vessel or vessels were in such ports, taken in connection with the defendants' letter of the fourteenth of December, and indeed without it. The plaintiffs were not bound to show that, by inquiry of the owners or consignees of such vessel or vessels, ship or ships, that the defendants could have " got into possession of, and shipped by, " any one or more of them, the silk which they undertook to purchase. We were not referred, on the argument, to any adjudication requiring such strict line of proof, and it seems apparent that it could not be demanded. There is, nevertheless, evidence showing the arrival in this country of the Thorkeld, Benefactor and Nordstern, which meets a part of the requests just considered. The rule of damages adopted by the court, namely, the difference between the cost of the silk laid down in New York, and its market value at New York at the time it would have arrived in the usual course of trade, was correct. The courts of this State have decided that a loss of profits, within the contemplation of the parties at the time of entering into the contract, and a direct consequence of the breach, and not speculative or contingent, may be recoverable ; * and, in cases kindred to this, it has been held, elsewhere, that the principal is entitled to recover the value of his intended purchase, at the port of destination.† The correspondence between the parties to this controversy, shows conclusively that a loss of profits was within their contemplation. The whole transaction was a perfectly legitimate one in a mercantile point of view, in which the plaintiffs sought to purchase for profits to be made, and in which the defendants perfectly well understood the object of the purchase, and the nature of the enterprise. The damages were not speculative or contingent. The price of the merchandise abroad, with the expenses of delivery here, and its market value here, easily ascertainable, after the expiration of the usual and ordinary time for transportation, would give the exact profit to be realized. The article to be purchased was a well known staple, though subject to the vicissitudes or exigencies of the market, when exposed for sale. The tabular statements, made up upon various hypotheses, covering the periods, properly considered, but

* Griffin v. Colver, 16 N. Y., 494, 495; Masterson v. The Mayor, 7 Hill, 61.

† Ryder v. Thayer, 3 La. Annual, 149; Bell v. Cunningham, 3 Peters, 69 ; see also Borries v. Hutchinson, 18 C. B. (N. S.), 445.

which were objected to, were intended to supply the information to the jury, of the cost of the silk, and were proper under the rule of damages adopted by the court.

The principle of the rule declared, applies as well to carriers, as to the parties contracting in relation to the goods. It has been held, that, even in the absence of any special contract, a common carrier is bound by implication of law, to transport merchandise within a reasonable time, and if he fails to do so, the measure of damages is the difference in its value at the time and place it ought to have been delivered, and at the time of its actual delivery.*

This may embrace a profit to be made. The requests thus considered, are all that were argued, although others were refused, but they are either kindred to these considered, or valueless, and so regarded.

We discover no cause for disturbing the judgment herein, and it should be affirmed.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed.

* Ward v. N. Y. Cen. R. R. Co., 47 N. Y., 29.