(11 App. Div. 89.)

### VAN COTT et al. v. HULL.

(Supreme Court, Appellate Division, Second Department. December 30, 1896.)

1. AGENTS—NEGLIGENCE—LIABILITY OF AGENT TO PRINCIPAL.

An agent employed to loan money through a subagent is personally liable to his principal for a loss of money paid by the agent for an assignment to the principal of a worthless mortgage held by the subagent, and an indorsement without recourse of the mortgage note, where the agent had no other assurance of the value of the mortgage than the statement, when the mortgage was given, made by the mortgagor, a stranger to him, that the premises were unincumbered; the agent making no inquiry and having no abstract.

2. APPEAL—ENTRY OF JUDGMENT BY APPELLATE COURT.

Though plaintiff was entitled to a judgment in the lower court on the undisputed facts, the appellate court will not enter a judgment in his favor on reversing a judgment for defendant, but will send the case back for a new trial, since it cannot be assumed that the facts presented on a new trial would be the same.

Appeal from trial term, Kings county.

Action by Alexander H. Van Cott and Amy C. Van Cott, as executors of the will of Kate Van Cott Mitchell, against Aurelius B. Hull, to recover an amount of money lost, through defendant, as agent of deceased, negligently investing same in a worthless mortgage. From a judgment entered on a verdict in favor of defendant, and from an order denying a motion for new trial, plaintiffs appeal. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Josiah T. Marean, for appellants.
T. Henry Dewey, for respondent.

WILLARD BARTLETT, J. This litigation grows out of the employment of the defendant by Mrs. Kate Van Cott Mitchell to receive the money and securities constituting a legacy of $10,000 bequeathed to her by her husband, and to invest, continue the investments, and reinvest the same in Western mortgage securities in her behalf. Mr. Hull lived in Morristown, N. J., and he had been in the habit for many years of making investments on real estate in the West through John C. Brockenbrough, Sr., of Lafayette, Ind. It was admitted on the trial that Mrs. Mitchell authorized Mr. Hull, whenever he required an agent in the West in making investments, to employ Mr. Brockenbrough as such agent. In 1893, the sum of $2,000 belonging to Mrs. Mitchell was in the hands of Mr. Hull available for reinvestment. He wrote to Mr. Brockenbrough on the subject, under date of March 13, 1893, saying:

"Please find a good loan at 8 per cent. for the $2,000 I have on hand belonging to Mrs. Mitchell personally."

To this request, Mr. Brockenbrough responded three days later:

"I have two loans, $2,000 each, in my favor, drawing 8 per cent. interest. I can assign one of these to Mrs. Mitchell, if you say so."

Mr. Hull did say so, as appears from a letter which he wrote to Mr. Brockenbrough on the 18th of March, 1893, in which, after referring to other matters, he says:

"Also, you can assign to Kate Van Cott Mitchell one of the two loans of your own, of $2,000 each, on Tacoma property, at 8 per cent. as you propose, and I will pay your draft for $2,000 and accrued interest, although I shall have to advance the interest for her."

On the same day Mr. Hull wrote to Mrs. Mitchell, saying:

"I have to-day accepted a loan of $2,000 in reinvestment of that sum collected from Jonathan Howell for your account. I have not yet the name of the party, and I shall not get the papers of the loan for say two weeks yet. It is on property in the city of Tacoma, Wash., and bears interest at rate of 8 per cent."

On March 31, 1893, Mr. Brockenbrough sent to Mr. Hull the papers relating to the Tacoma loan, except the assignment of the mortgage by himself to Mrs. Mitchell, which he forwarded to Tacoma to be recorded there. He also advised Mr. Hull that he had drawn on him for the $2,000 and interest. Mr. Hull paid the draft on the 3d of April following.

The papers which Mr. Hull received from Mr. Brockenbrough comprised a mortgage note and mortgage to the latter from John C. McIntosh and Elizabeth McIntosh, his wife, for $2,000, the mortgage being upon lots Nos. 13 and 14, in block 38, of Buckley's addition to Tacoma; an application from John C. McIntosh to John C. Brockenbrough, Jr., who appears to have been a real-estate broker in Tacoma, for the loan in question; and an instrument purporting to be a policy of fire insurance upon a building on the premises. The mortgage note was indorsed by John C. Brockenbrough, Sr., without recourse, and the assignment to Mrs. Mitchell, which he sent for record to Tacoma, was also expressed to be without recourse against him. The only assurance that I have been able to find in the papers as to the existence of other incumbrances on the lots was the negative answer of McIntosh, the alleged owner, to the question in the application, "Are there any mortgages, judgments, taxes, special tax bills, or other liens against the property?" The security turned out to be valueless. There was a prior mortgage upon the premises, which was foreclosed, and left nothing applicable to the payment of the Brockenbrough loan.

In the present suit, Mrs. Mitchell's representatives seek to recover the $2,000 which Mr. Hull paid to Mr. Brockenbrough for the assignment of this worthless second mortgage, on the ground that Mr. Hull, as her agent, is chargeable with want of proper care and skill in making the investment. The question whether he was negligent in discharging the duties of his agency was left to the jury in the court below, and has been answered by them favorably to the defendant; but the plaintiffs insist that, upon the admitted and undisputed facts of the case, the law imputes negligence to the agent. Upon the correspondence and documents in evidence, and the testimony of

the defendant himself, I can see no escape from the conclusion that, although he acted honestly and in good faith, he failed to do his whole duty to the plaintiffs' testatrix as her attorney in fact to reinvest the sum which is the subject of this controversy. In this particular transaction, Mr. Brockenbrough did not act as Mr. Hull's subagent for the investment of Mrs. Mitchell's money, but Mr. Brockenbrough was the seller and Mr. Hull was the purchaser of a mortgage which Mr. Brockenbrough himself already owned. Mr. Brockenbrough was not an agent endeavoring to loan money sent by Mr. Hull to be invested, but a vendor disposing of a mortgage which was his own property. His attitude towards Mr. Hull was therefore radically different from that which he would have occupied as an agent. As a seller, he owed Mr. Hull no duty of care in respect to the value of the property as compared with the amount of the mortgage. The relation between them was one of opposing interests, instead of one in which their interests were harmonious. As soon as Mr. Hull knew that Mr. Brockenbrough proposed to assign to Mrs. Mitchell a mortgage belonging to him, he knew, or should have known, that he was dealing with Mr. Brockenbrough no longer as his agent, but as a principal, and should have acted accordingly.

An agent to invest money undertakes to exercise such reasonable skill and diligence in investing the same as are ordinarily exercised by persons of common capacity in such transactions. Heinemann v. Heard, 50 N. Y. 27. Such was the obligation of Mr. Hull in the case at bar. Can it be said that he discharged it in respect to the investment of this sum of $2,000? I think not. At the time he paid Mr. Brockenbrough's draft, he had no information from that gentleman personally as to the value of the mortgaged lands or the non-existence of prior incumbrances. All he knew on either subject appears to have been contained in the papers which Mr. Brockenbrough sent on at the same time with his draft. These included a sworn appraisal by persons that were unknown to Mr. Hull, and the statement of McIntosh, the applicant for the loan, who was equally unknown to him, that there were no prior liens on the property. No abstract of title was furnished, and Mr. Brockenbrough had been careful to indorse the mortgage note without recourse. In my opinion, it was not the exercise of reasonable skill and diligence, such as the law requires of an agent for the investment of money, to buy the mortgage of Mr. Brockenbrough, under these circumstances, without further inquiry and assurance as to the existence of prior liens upon the mortgaged lots. A letter or telegram from Mr. Hull to the auditor of Pierce county in the state of Washington would doubtless have elicited a prompt response showing that there was a prior mortgage on the lots, and with that information it may safely be assumed that Mr. Hull would have declined to purchase the mortgage. "The right of an agent to advance funds on second mortgages or security not of the first class may well be questioned," says Miller, J., in Whitney v. Martine, 88 N. Y. 535. "And, as a general rule, it may properly be laid down that it is not prudent or safe to advance moneys on second mortgages when there are large

prior incumbrances, and especially where the personal security of the mortgagor is in any way precarious." In the present case, Mr. Hull's sole information concerning the personal security of the mortgagor appears to have been the inference which he might have drawn from the fact that Mr. Brockenbrough had carefully protected himself from liability in transferring the mortgage note.

On the record before us, it seems to me quite clear that Mrs. Mitchell's money would never have been put into this worthless mortgage if her agent had exercised the reasonable degree of care which the law demands. In my opinion, the judgment should be reversed, and a new trial granted, with costs to abide the event. We cannot direct judgment for the plaintiffs, as requested by their counsel, for we cannot assume that a different state of facts may not be presented by further proof when the case is tried again. All concur.