FRITZ S. LUST, Appellant, *v.* HANOVER NATIONAL BANK, Respondent. (Actions Nos. 1 and 2.)

FREDERICK S. LUST, Appellant, *v.* HANOVER NATIONAL BANK OF NEW YORK, Respondent. (Action No. 3.) *

First Department, July 1, 1932.

*Louis Boehm* of counsel [*David Rasch* with him on the brief; *Martin C. Ansorge*, attorney], for the appellant.

*Theo. J. Miller* of counsel [*Dunnington, Gregg & Church*, attorneys], for the respondent.

MERRELL, J. The actions were brought to recover of defendant $41,000 damages which plaintiff Frederick S. Lust, also known as Fritz S. Lust, alleges he sustained because of the failure of the defendant to deliver to him 500 shares of the stock of the Chicago, Milwaukee and St. Paul Railroad Company. The shares of stock in question had been placed with defendant by a German banking institution known as Direction Der Disconto-Gesellschaft. The defendant bank was the custodian in this country of certain securities left in its custody by the German banking institution. It had also on deposit for said German bank at various times considerable sums of money. On or about March 14, 1917, the defendant received the following radiogram from the German bank, which was located at Berlin:

"BERLIN via Radio TUCKERTON NJ Mch 14, 1917.
" HANOVER NATIONAL BANK
" New York 2994
" Test Tuesday one hundred ninety-three Pay Eighteen hundred dollars Fritz Lust Hotel Colonial 81 Street Stop Deliver free value to same party ex depot five hundred Chicago Milwaukee common shares telegraph execution

" DISCONTOGE
" 1206 AM "

The first six words of this radiogram are code words. This radiogram was received at the banking house of the defendant at about half-past nine o'clock on the morning of March fifteenth and came to the attention of the vice-president of the bank, one William H. Suydam, shortly thereafter. Suydam at once instructed an employee of the bank to telephone to the Colonial Hotel in an effort to locate plaintiff. The evidence shows that the bank's employee was unable to obtain any information at the hotel as to the whereabouts of plaintiff, more than the fact that he was not at

the hotel, and that he was in some hospital, but the name of the hospital could not be ascertained by the bank's representative. Plaintiff claimed as his cause of action that the 500 shares of the stock of the Chicago, Milwaukee and St. Paul Railroad Company were never delivered by defendant to him. Such is the fact. Plaintiff contends that defendant was negligent in not hunting up plaint ff and making a manual delivery of the shares in question, and that the defendant was, at least, negligent and disobeyed the instructions contained in the radiogram in not notifying the German bank of its inability to locate plaintiff. There was no proof given at the trial of any call upon the defendant bank by plaint ff, nor is there any evidence that plaintiff was ever notified, either by his father, at whose instance it is claimed the German bank requested delivery of the shares to plaintiff, or by the German bank. The plaintiff was never advised of the order of his father, and it is claimed that it was nearly two years thereafter before plaintiff learned that any such radiogram had been sent. The radiogram was sent only about three weeks before the declaration of war with Germany. At that time the moneys and stock were liable to be seized at any time by the Alien Property Custodian. The securities in question were seized by the Alien Property Custodian in October, 1917. Under the Trading with the Enemy Act and under the order of the President of the United States the Alien Property Custodian had a right to seize said securities and such right dated back to the time when it is claimed the securities should have been turned over to plaintiff. Plaintiff, plaintiff's father and the German bank were then all German subjects and enemies of the United States within the meaning of the Trading with the Enemy Act. It was not until August 20, 1920, that the plaintiff received his final naturalization papers and became an American citizen. In our opinion, plaintiff was unable to establish any negligence on the part of the defendant bank. There was no duty on the part of the bank to go out of its way to hunt up the plaintiff when it received the radiogram in question. The bank held custody of the securities in question without compensation and gratuitously, depending on remuneration for its trouble in the matter from the use of a considerable money deposit from the German bank at the time, upon which it paid the German bank interest. There was an attempt on the part of plaintiff to establish that some director of the German bank had orally assigned to plaintiff's father, prior to the bringing of the action, its cause of action against the defendant bank for failure to turn over the securities in question. This alleged assignment was not established by any satisfactory evidence at the trial. It was the claim of plaintiff that the alleged oral assignment was made by one of 600

directors of the bank with whom plaintiff and his father had a casual conversation long after the sending of the radiogram in question. There was also an attempt to prove that this alleged oral assignment made to the father was afterwards transferred to the plaintiff by assignment in writing. The court held at the close of the evidence that the plaintiff had failed to establish any cause of action in either of the actions which he had brought to recover the value of the securities in question.

It is very clear that by reason of the failure of the defendant bank to turn over the securities in question the plaintiff suffered no damage, as said securities were at that time subject to seizure by the Alien Property Custodian and were eventually seized by said official. What plaintiff is apparently seeking in these actions is to recover the depression in the value of the stock in question as the result of its seizure by the Alien Property Custodian.

Plaintiff has no cause of action. The defendant was not legally bound to hunt up plaintiff and was only required to turn over the securities in question if and when plaintiff appeared at the bank and receipted therefor. Plaintiff never made any demand for the securities, and never appeared at the bank, and the defendant would surely have been guilty of an illegal act had it turned over the securities, except upon proof of the identity of the plaintiff.

The judgments appealed from should be affirmed, with costs in each case to defendant, respondent, against plaintiff, appellant.

MARTIN and TOWNLEY, JJ., concur; FINCH, P. J., and O'MALLEY, J., dissent, and vote for reversal and a new trial.

O'MALLEY, J. (dissenting). Considering the dismissal of plaintiff's causes of action at the close of his case as tantamount to a demurrer to the evidence, I am of opinion that the plaintiff established *prima facie* causes of action and that in any event a new trial should be ordered because of errors in the exclusion of evidence.

On the first cause of action there seems to me to have been sufficient to show an assignment to the plaintiff by the managing director of the assignor, Director Karbe. The only interest that the defendant had in the assignment was to be protected against any other claim upon the same subject-matter. (*Hoppe* v. *Russo-Asiatic Bank*, 200 App. Div. 460; affd., 235 N. Y. 37.)

Plaintiff's evidence was sufficient in this respect, particularly as plaintiff's assignor later made a formal assignment, in no way repudiating the earlier assignment by Karbe. Furthermore, the court improperly excluded evidence proffered by the plaintiff as to his knowledge of Karbe's position with plaintiff's assignor, gained from personal transactions had with the assignor.

It was the duty of the defendant to use reasonable skill and diligence in the performance of its duty as an agent and to obey the instructions of its principal. (*Heinemann* v. *Heard*, 50 N. Y. 27; *Minneapolis Trust Co.* v. *Mather*, 181 id. 205, 214.)

I am of opinion that it was error to exclude evidence proffered by the plaintiff respecting methods and customs observed by other agents of like nature in connection with instructions similar to those given to the defendant. (*Noah* v. *Bowery Savings Bank*, 225 N. Y. 284.) Under such proof a jury question as to whether defendant had complied with its duty in the circumstances might have been presented.

I, therefore, dissent and vote for reversal and a new trial.

FINCH, P. J., concurs.

Judgments affirmed, with costs in each case to the respondent.